

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

JOAQUIN TERRERO,                                :

        Plaintiff,                          :
                         :

    vs.                                        :        CIVIL ACTION NO.: CV202-134
                         :

HARRELL WATTS, National Inmate        :
Appeals Coordinator; R. L. MATTHEWS,  :
Regional Director, Federal Bureau of  :
Prisons; D.L. HOBBS, Warden;          :
Chaplin LAMB and Chaplin FOX,         :
individually and in their official capacities, :

        Defendants.                        :

## MAGISTRATE JUDGE'S SUPPLEMENTAL
## REPORT AND RECOMMENDATION

      Plaintiff, an inmate currently incarcerated at the Federal Satellite Low Prison Camp

in Jesup, Georgia, has filed an action pursuant to, *inter alia*, the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA") and the Religious Freedom and

Restoration Act of 1993 ("RFRA"). By Report dated September 8, 2003, (Doc. No. 47), the

undersigned recommended that the Motion to Dismiss filed by Defendants Lamb and Fox

(Doc. No. 29) be granted based on the finding that Defendants did not violate Plaintiff's

First Amendment rights or his right to equal protection. The undersigned further

determined that, even if Defendants' actions were violative of Plaintiff's constitutional rights,

their actions were protected under the doctrine of qualified immunity. In another Report

of even date (Doc. No. 49), the undersigned recommended that the Motion to Dismiss filed

AO 72A
(Rev 8/82)

by Defendants Hobbs, Watts, and Matthews (Doc. No. 31) be granted based on respondeat superior principles.

Plaintiff, through counsel, filed Objections to these Reports.   (Doc. No. 51). Plaintiff's counsel asserts that the undersigned "substantially erred" by stating that there was no need to discuss the RFRA, as the United States Supreme Court declared this Act unconstitutional in City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed.2d 624 (1997). Plaintiff's counsel avers that the proper standard in reviewing this matter is the "'compelling interest standard,' as set forth under the RLUIPA and RFRA." (Doc. No. 51, p. 2.) The undersigned hereby adopts the findings of fact in his Reports and supplements these Reports as follows.

## DISCUSSION AND CITATION OF AUTHORITY

### I.    History of the RFRA and the RLUIPA

In Employment Div., Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed.2d 876 (1990), the Supreme Court upheld an Oregon law which prohibited the possession of a controlled substance unless it had been prescribed by a medical practitioner.  Smith was fired from his job after ingesting peyote for sacramental purposes at a church ceremony and was not allowed to collect unemployment benefits for being discharged for work-related misconduct. Smith, 494 U.S. at 874, 110 S. Ct. at 1598. The Supreme Court declined to extend the strict scrutiny test of Sherbert v. Verner, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed.2d 965 (1963), and reasoned that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral

2

law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." Smith, 494 U.S. at 879, 110 S. Ct. at 1600 (internal citation omitted). The Court stated that "[t]o make an individual's obligation to obey. . . a law [of neutral application] contingent upon the law's coincidence with his religious beliefs, except where the State's interest is compelling– permitting him, by virtue of his beliefs– to become a law unto himself– contradicts both constitutional tradition and common sense." Id. at 885, 110 S. Ct. at 1603. The Court also noted that, "because we value and protect religious divergence" in this country, "we cannot afford the luxury of deeming presumptively invalid every regulation of conduct that does not protect an interest of the highest order. Id. at 888, 110 S. Ct. at 1605 (emphasis in original).

In response to the Supreme Court's decision in Smith, Congress passed the Religious Freedom and Restoration Act of 1993 ("RFRA"), 42 U.S.C.A. § 2000bb, et seq. Congress passed this Act pursuant to the enforcement power of § 5 of the Fourteenth Amendment. This Act provided, in pertinent part, that the Government could "substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person– (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000bb-1(b). This provision extended the strict scrutiny test of Sherbert to governmental burdens on the exercise of religion. In fact, the stated purposes of the RFRA were "(1) to restore the compelling interest test as set forth in Sherbert,. . . and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C.A. § 2000bb(b).

3

The Supreme Court later determined that Congress' actions were violative of their power under § 5 of the Fourteenth Amendment in City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed.2d 624 (1997). In so doing, the Court concluded that "Congress' power under § 5,. . ., extends only to *enforcing* the provisions of the Fourteenth Amendment." City of Boerne, 521 U.S. at 519, 117 S. Ct. at 2164. (Emphasis supplied). This power is remedial and preventive in nature and is therefore limited. Id. at 524, 117 S. Ct. at 2166. The Enforcement Clause "did not authorize Congress to pass 'general legislation upon the rights of the citizen, but corrective legislation, that is, such as may be necessary and proper for counteracting such laws as the States may adopt or enforce, and which, by the amendment, they are prohibited from making or enforcing.'" Id. at 525, 117 S. Ct. at 2166 (quoting Civil Rights Cases, 109 U. S. 3, 13-14, 3 S. Ct. 18, 23, 27 L. Ed. 835 (1883)). The Supreme Court found the RFRA to be "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior. It appears, instead, to attempt a substantive change in constitutional protections." Id. at 532, 117 S. Ct. at 2170.

Congress passed the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. § 2000cc, *et seq.*, in an attempt to make up for the constitutional infirmities that plagued the RFRA. Instead of using its enforcement power under § 5 of the Fourteenth Amendment, Congress "drew from its federal spending and Commerce Clause powers, stating that [the RLUIPA] 'applies in any case in which. . . the substantial burden is imposed in a program or activity that receives Federal financial assistance; or. . . the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C.A. §

4

2000cc-1(b). The RLUIPA "tracks the substantive language of the [RFRA], and "applies the RFRA standard to protect the religious exercise of persons residing in or confined to institutions. . . such as prisons or hospitals." 146 Cong. Rec. E-1563 (daily ed. Sept. 22, 2000)(comments of Rep. Charles T. Canady). In fact, it was the hope of Sen. Orrin Hatch and Sen. Edward Kennedy, the co-sponsors of the RLUIPA, that the Act "provide a remedy and a neutral forum for such [persons]. . . . The compelling interest test is a standard that responds to facts and context. What the Judiciary Committee said about that standard in its report on RFRA is equally applicable to [t]his Act." 146 Cong. Rec. S7774-01, *S7775 (daily ed. July 27, 2000) (Joint Statement of Sen. Hatch and Sen. Kennedy).

## II. The Supreme Court's Decision in <u>City of Boerne</u> is Applicable in This Case.

Plaintiff's counsel alleges that the Supreme Court's decision in <u>City of Boerne</u> invalidated the RFRA on the state level, and, because Plaintiff is a federal prisoner, the decision is not applicable in this case. (Doc. No. 51, p. 2.) While counsel ostensibly makes a valid point, the language of the RFRA does not support her argument. "Government" is defined in this statute to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the *United States*, or of a covered entity." 42 U.S.C.A. § 2000bb-2(1) (emphasis supplied). Pursuant to 18 U.S.C.A. § 4042(a), the Bureau of Prisons is under the direction of the Attorney General of the United States and is charged with the "management and regulation of all Federal penal and correctional institutions," 18 U.S.C.A. § 4042(a)(1), including the Jesup facility.

5

AO 72A
(Rev 8/82)

The Attorney General is the head of the Department of Justice, 28 U.S.C.A. § 503, and by extension, the Bureau of Prisons is part of the Department of Justice.  The Supreme Court found that the restrictions of the RFRA applied "to every agency and official of the Federal, State, and local Governments," and the RFRA's "[s]weeping coverage ensures its intrusion at every level of government."  City of Boerne, 521 U.S. at 532, 117 S. Ct. at 2170.  The passage of the RFRA exceeded Congress' authority, and, accordingly, it is the "Court's precedent. . . which must control."  Id. at 536, 117 S. Ct. at 2172.  Though Congress passed the RFRA pursuant to § 5 of the Fourteenth Amendment, the Court's holding in City of Boerne is no less relevant in a situation where a federal prisoner has filed a cause of action against prison officials.

Moreover, courts are to apply the same principles to causes of action filed by federal prisoners pursuant to Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed.2d 619 (1971), as we do to causes of action filed by state prisoners pursuant to 28 U.S.C.A. § 1983.  Winterland Concessions Co. v. Trela, 735 F.2d 257, 262 (7th Cir. 1984).  Failure to apply the same standards against state and federal officials would create an imbalance in the availability of a remedy for the same conduct Rodriguez-Mora v. Baker, 792 F.2d 1524 (11th Cir. 1986)(applying the same standards for deprivation of property interest under the Fifth and Fourteenth Amendments).  Likewise, if this Court were to accept counsel's argument that the Supreme Court's decision in City of Boerne has no application to the case sub judice, an imbalance would result.  Federal prisoners would have an available remedy which state prisoners would not otherwise have.

6

Nonetheless, assuming *arguendo* that counsel's contention that the City of Boerne decision is not applicable is correct, the RFRA and the RLUIPA are laws respecting the establishment of religion, and, as discussed below, are unconstitutional.

## II.     The RFRA and the RLUIPA are Unconstitutional Because They are Laws Respecting the Establishment of Religion.

The First Amendment of the United States Constitution provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."   U.S. CONST. amend. I, cl. 1.   The Establishment Clause "prevents the government from endorsing or affiliating with any particular religious doctrine or organization, expressing a preference between religions, or promoting religion generally." Kilaab Al Ghashiyah v. Dep't of Corr. of State of Wis., 250 F. Supp.2d 1016, 1021 (E.D. Wis., Mar. 04, 2003) (citing Bd. of Educ of Kiryas Joel Village Sch. Dist. v. Grumet, 512 U.S. 687, 703, 114 S. Ct. 2481, 2491, 129 L. Ed.2d 546 (1994)(stating that "a principle at the heart of the Establishment Clause is that government should not prefer one religion to another, or religion to irreligion").

In Lemon v. Kurtzman, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed.2d 745 (1971), the Supreme Court developed a three-pronged test to determine whether a governmental action violates the Establishment Clause.   Under the Lemon test, an action is permissible if: (1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not create excessive entanglement between government and religion.   Id. at 612-13, 91 S. Ct. at 2111.   If the challenged action fails any of these

7

prongs, then it is a violation of the Establishment Clause. Edwards v. Aguillard, 482 U.S. 578, 583, 107 S. Ct. 2573, 2577, 96 L. Ed.2d 510 (1987). Application of the Lemon test reveals that § 2000bb-1(a) of the RFRA and § 2000cc-1 of the RLUIPA violate at least two of the three prongs; as a result, those portions of those Act are unconstitutional, for they are laws respecting the establishment of religion.

I.      The Purpose Prong

The first prong of the Lemon test "asks whether the government's actual purpose is to endorse or disapprove of religion." Edwards, 482 U.S. at 585, 107 S. Ct. at 2578. This is aimed at preventing government "from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters." Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 335, 107 S. Ct. 2862, 2868, 97 L. Ed.2d 273 (1987). The secular purpose prong can be satisfied, however, even if legislation is motivated in part by a religious purpose. Madison v. Riter, 2003 U S. Dist. LEXIS 1094, *17 n.4 (W.D. Va. Jan. 23, 2003).

The purposes of the RFRA were "(1) to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U S. 205 (1972) and to guarantee its application in all cases where the free exercise of religion is substantially burdened; and (2) to provide a claim or defense to persons whose religious exercise is substantially burdened by the government." 42 U.S.C.A. § 2000bb(b).  In enacting the RFRA, Congress made no attempt to obscure its purpose– the protection of the free exercise of religion over other rights, which can hardly be considered a secular purpose.  The stated purpose of the RLUIPA is the protection of religious liberty. The *actual* purpose of the RLUIPA is to single out the religious practices of inmates as a

8

congressionally favored activity "relative to other constitutionally protected conduct." Al Ghashiyah, 250 F. Supp. at 1022. Assuming that Congress had a valid, secular purpose in passing the RLUIPA, this Act has the primary effect of advancing religion. Id. (citing Madison, 2003 U.S. Dist. LEXIS at *17 n.4).

II.     The Effect Prong

Even if there is a valid, secular purpose in support of congressional action, under the effect prong of the Lemon test, it must be determined "whether the practice. . . in fact conveys a message of endorsement or approval." Lynch v. Donnelly, 465 U.S. 668, 690, 104 S Ct. 1355, 1368, 79 L. Ed 2d 604 (1984)(O'Connor, J., concurring). If this message is conveyed, a violation of the Establishment Clause has occurred. Id.

Other constitutional claims brought by inmates, including those brought under the Free Exercise Clause, are analyzed under a rational basis test. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404, 96 L. Ed.2d 282, 289 (1987); Turner v. Safley, 482 U.S. 78, 89-91, 107 S. Ct. 2254, 2261-2263, 96 L. Ed.2d 64 (1987). In fact, the Supreme Court recently applied the Turner rational basis test to prison regulations that were challenged, in part, based upon the First Amendment's right to free association. Overton v. Bazzetta, — U.S. —, 132 S. Ct. 2162, 2167-68 (2003). Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. O'Lone, 482 U.S. at 348, 107 S. Ct. at 2404. In addition, courts are to give great deference to prison officials "who are actually charged with and trained in the running of" prisons. Id. at 349, 107 S. Ct. at 2404. This deference is a product of the experience of prison administrators, combined with the limitations of the judiciary, that make the courts ill-suited to control the

9

administration of the prison system. <u>Madison</u>, 2003 U.S. Dist. LEXIS at *20. The <u>Turner</u>

court rejected the application of a strict scrutiny analysis to the constitutional claims of

inmates because "subjecting the day-to-day judgments of prison officials to an inflexible

strict scrutiny analysis would seriously hamper their ability to anticipate. . . problems and

to adopt innovative solutions to the intractable problems of prison administration." <u>Turner</u>,

482 U.S. at 89, 107 S. Ct. at 2262.

In <u>Turner</u>, the Supreme Court identified four factors that guide the determination of

whether such a regulation or practice is reasonable:

> (1) whether there is a valid, rational connection between the
> prison regulation and the legitimate governmental interest put
> forth to justify it; (2) whether there are alternative means of
> exercising the right that remain open to prison inmates; (3) the
> impact that accommodation of the asserted constitutional right
> will have on guards, other inmates, and on the allocation of
> prison resources; and (4) the presence or absence of ready
> alternatives that fully accommodate the prisoner's rights at de
> minimis costs to valid penological interests.

<u>Turner</u>, 482 U.S. at 89-91, 107 S. Ct. at 2261-2263 (citations omitted).

Despite the passage of the RFRA and the RLUIPA, judicial deference to the

decisions of prison administrators applied equally to all claims based on the alleged

violations of fundamental rights, including free speech claims, claims concerning the right

to marry, the right to privacy, the right of meaningful access to the courts, and racial

discrimination. <u>Madison</u>, 2003 U.S. Dist. LEXIS at *21 (internal citations omitted).

The constitutional balancing test set forth by the RFRA and the RLUIPA is that of

strict scrutiny. 42 U.S.C.A. § 2000bb(b); 42 U.S.C.A. § 2000cc-1(a). Thus, in the penal

system, the religious rights of inmates are afforded more protection than their other

10

rights–even the other protections of the First Amendment– because of these Acts.   In essence, by passing this Act, Congress has conveyed a message of endorsement, and that message is that the right of inmates to freely practice their respective religions is far more important than other fundamental rights.   As the Supreme Court warned, "[t]o make an individual's obligation to obey. . . a law [of neutral application] contingent upon the law's coincidence with his religious beliefs, except where the State's interest is compelling– permitting him, by virtue of his beliefs– to become a law unto himself– contradicts both constitutional tradition and common sense." Smith, 494 U.S. at 885, 110 S. Ct. at 1603. Furthermore, the benefits Congress wishes to confer through these Acts would flow solely to those inmates who are religious.[1] At the same time, the message conveyed to prisoners who do not hold sincerely held religious beliefs is that their rights are not as important as the rights of their religious counterparts.   42 U.S.C.A. § 2000bb-1(a) and 42 U.S.C.A. § 2000cc-1 are unconstitutional, as they convey a message of endorsement or approval of religion, and they show Congress' preference for "religion to irreligion." Grumet, 512 U.S. at 703, 114 S. Ct. at 2491.

Even though the free exercise of religion outside prison walls is a right protected by a higher standard, it is in the unique setting of prisons that this is unworkable.   To require prison officials to justify any restriction under a strict scrutiny standard would go against Supreme Court precedent.

[1] As Justice Stevens noted in City of Boerne, "the [RFRA] has provided . a legal weapon that no atheist or agnostic can obtain   This governmental preference for religion, as opposed to irreligion, is forbidden by the First Amendment " City of Boerne, 521 U.S. at 537, 117 S. Ct. at 2172 (Stevens, J., concurring)

11

AO 72A
(Rev 8/82)

III.    The Entanglement Prong

The third prong of the Lemon test states that a "statute must not foster an excessive entanglement of government with religion." Lemon, 403 U.S. at 613, 91 S. Ct. at 2111. To determine whether a statute fosters excessive entanglement, a court must examine "the character and purposes of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." Id. at 615, 91 S. Ct. at 2112. A sure sign of entanglement is the state's involvement in administrative functions of religious programs. Id.

The RFRA and the RLUIPA foster an excessive entanglement because these Acts "force[ ] the [government] to become involved with, knowledgeable about, and exceedingly sensitive to the varied religious practices of their inmates. [They] also force[ ] the federal courts to become involved in prison administration, an area that the Supreme Court has admonished judges to avoid." See Al Ghashiyah, 250 F. Supp. at 1031. These Acts require prison officials to define religion and to make distinctions between religious and secular practices. Id. Prison officials will face situations on a daily basis regarding religious practices that will then require them to become deeply involved in and to become the arbiters of the differences between religion and secularism on a daily basis. Accordingly, the RFRA and the RLUIPA foster an excessive entanglement between religion and governmental action, particularly in the unique settings of prisons.

12

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Plaintiff's claims against Defendants based on the RFRA and the RLUIPA be **DISMISSED**, and that these Acts be found **UNCONSTITUTIONAL** in the context of federal prison administration.

**SO REPORTED** and **RECOMMENDED**, this _14th_ of October, 2003.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

13

# United States District Court
## *Southern District of Georgia*

TERRERO

_____ )

vs                              )        CASE NUMBER CV202-134 _____

WATTS, ET AL                    )        DIVISION       BRUNSWICK _____
_____ )

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1.   Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2.   That the aforementioned enveloped contained a copy of the document dated
     10/14/03 _____, which is part of the official record of this case.

Date of Mailing:     10/14/03 _____

Date of Certificate       [X] same date,     or   _____

                          Scott L. Poff,  Clerk

                    By:   _Sherry Taylor_____
                          Sherry Taylor, Deputy Clerk

Name and Address

Joaquin Terrero, Federal Satellite Low, 42498-019, 2650 Highway 301 South, Jesup, GA 31599
Rhonda Gelfman
Francisco Gonzalez-Burgos
Lawrence Lee
C. Deen Strickland
Cary Feldman
Harry Dixon Jr.
USM 285 forms (2)

                              [X]  Copy placed in Minutes
                              [ ]  Copy given to Judge
                              [X]  Copy given to Magistrate