# United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
U.S. DIST. COURT
BRUNSWICK DIV.
26 P 4:35
CLERK

JOAQUIN TERRERO, : CIVIL ACTION

    Plaintiff, :

        v. :

HARRELL WATTS, National :
Inmate Appeals Coordinator,
R. L. MATTHEWS, Regional :
Director, Federal Bureau of
Prisons, D. L. HOBBS, Warden, :
CHAPLAIN LAMB, and CHAPLAIN
FOX, in their Individual and :
Official Capacities,
                            :

    Defendants.,
                            :

        v.
                            :

UNITED STATES OF AMERICA,
                            :
    Intervenor Defendant.          NO. CV202-134

## O R D E R

Plaintiff, formerly an inmate incarcerated at the Federal Satellite Low Prison Camp in Jesup, Georgia, filed an action pursuant to 28 U.S.C. § 1331, <u>Bivens v. Six Unknown Narcotics Agents</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed.2d 619 (1971),

AO 72A
(Rev. 8/82)

the Religious Land Use and Institutionalized Person's Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., and the Religious Freedom and Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb, et seq., alleging that Defendants violated his right to free exercise of religion and equal protection.

The U. S. Magistrate Judge submitted three reports, recommending that the claims against all Defendants be dismissed, to which the parties filed objections. However, before the objections were ruled on, the Court stayed the proceeding pending resolution of a related issue in a case on immediate appeal to the Eleventh Circuit Court of Appeals.

On August 19, 2005, both the Eleventh Circuit and the United States Supreme Court having addressed the related issue, the Court granted Plaintiff's motion to lift the stay and reopen the instant case. Thus, presently before the Court are the parties' objections to the Magistrate Judge's three Reports and Recommendations. For the following reasons, the Court **CONCURS, IN PART,** with the Magistrate Judge's recommendations.

## FACTS

Plaintiff asserts that during a seven day festival called "Sukkot," observant Jews are to eat all meals in a temporary

AO 72A
(Rev. 8/82)

tent structure, called a "Sukkah," for the duration of the festival, and make special blessings over four specific plant species. Plaintiff alleges that Defendants, ignoring his advance oral and written requests to accommodate the 2001 Sukkot, did not construct the Sukkah until the fifth day of the festival, placed the Sukkah in a location where it was blown down the following day, deprived him of the plant species he needed, and only permitted him to eat one of his three daily meals in the Sukkah. Plaintiff further alleges that Defendants provided all religious groups in the prison except the Jewish inmates with outside clergy.

**PROCEDURAL POSTURE**

In two reports dated September 8, 2003, the U. S. Magistrate Judge recommended that all claims against Defendants be dismissed. He recommended that the claims against the prison chaplaincy, Defendants, Lamb and Fox, be dismissed because even if Plaintiff alleged sufficient facts demonstrating that either of these Defendants infringed upon Plaintiff's First Amendment or equal protection rights, Defendants had set forth legitimate penological interests to justify their actions.

The Magistrate Judge also recommended that the claims against prison personnel, Defendants, Hobbs, Watts, and Matthews, be dismissed based on respondeat superior principles. The Magistrate Judge concluded that Plaintiff failed to allege that any of these Defendants violated Plaintiff's constitutional rights, and that he improperly based liability solely on their positions. The Magistrate Judge further concluded that Defendant, Hobbs, as warden at the federal facility where Plaintiff was incarcerated, reasonably relied on the staff chaplains to provide adequate and appropriate religious services to the inmate population. On October 14, 2003, the Magistrate Judge prepared a supplemental report recommending that the claims based on RFRA and RLUIPA be dismissed and the Acts be found unconstitutional in the context of prison administration. After objections were filed, and before the pending motions were ruled on, the Court entered an order staying further proceedings pending resolution of the constitutionality of RLUIPA by the Eleventh Circuit Court of Appeals in a pending case. Both the Eleventh Circuit and the United States Supreme Court have now determined that RLUIPA is constitutional on its face. Therefore, the Court lifted the stay of proceedings and the case was reopened.

## DISCUSSION

Plaintiff alleges Defendants violated his First Amendment right to free exercise of his religion and his right to equal protection under <u>Bivens</u>, the RFRA, and the RLUIPA. Specifically, he asserts that Defendants violated his right to free exercise of his religion by: (i) constructing the Sukkah on the fifth day of the seven day Sukkot festival, despite notice 2 months earlier; (ii) constructing the Sukkah in a location where it was blown down the following day; (iii) permitting Plaintiff to eat only one meal per day in the Sukkah; (iv) denying Plaintiff's request for the four ritual fruits and plants; and (v) substituting matzah bread for challah bread. Plaintiff further asserts an equal protection claim for failure to provide the Jewish inmates with a contract rabbi when all other religious groups were provided outside clergy.

### I. Standard of Review

Defendants are entitled to dismissal of the claim if "the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." <u>Davita, Inc. v. Nephrology</u>

5

Assocs., P.C., 253 F. Supp. 2d 1370, 1374 (S.D. Ga. 2003). "In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." Beck v. Deloitte & Touche, 144 F.3d 732, 735 (11th Cir. 1998) (internal quotation marks omitted). Furthermore, the Court should consider only the facts as alleged in the parties' pleadings. Matters outside the pleadings may be considered only if the motion is converted to one for summary judgment. Fed. R. Civ. P. 12(b)(6), (c).

## II. Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). Determining "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action turns on the 'objective legal reasonableness' of the action." Anderson v. Creighton, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038, 97 L.Ed.2d

AO 72A
(Rev. 8/82)

523 (1987) (quoting Harlow, 457 U.S. at 819, 102 S. Ct. at 2739)).

Under Harlow's objective standard, government officials generally are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S. Ct. at 2730 (emphasis added). In determining whether the alleged violation was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640, 107 S. Ct. at 3039.

Defendants argue that they are protected by qualified immunity because Plaintiff has failed to establish that his rights were clearly established. Specifically, Defendant contends that

> Plaintiff has failed to meet his burden to show that the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court have clearly stated that it is a violation of a prisoner's constitutional rights if (1) a Sukkah is not built on the date requested or in the location he specifically requests; (2) he is not provided the four species of fruits and plants with which to pray on the Sukkot holiday; (3) he is not allowed to have three meals a day in the Sukkah; (4) he is not provided challah bread to observe the Sabbath; and (5) he is not provided a contract rabbi by the Bureau of Prisons

> when he is otherwise given ample opportunity and resources to practice his religion.

(Motion to Dismiss Mem. at 10.) In <u>Anderson</u>, the Supreme Court rejected such a narrow interpretation of "clearly established." <u>Id.</u> ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.") The relevant inquiry is whether Plaintiff had a clearly established right to reasonably exercise his religion at the time of the alleged misconduct.

The Court concludes that Plaintiff's right to such an opportunity was clearly established before the 2001 Sukkot. Since at least 1972, the Eleventh Circuit has recognized that "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First without fear of penalty." <u>Cruz v. Beto</u>, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081 n.2, 31 L.Ed.2d 263 (1972) (per curiam)). Thus, Defendants are not entitled to qualified immunity.

8

AO 72A
(Rev. 8/82)

III.     **RFRA and RLUIPA**

   A.     **RFRA**

In his October 14, 2003, Order, the Magistrate Judge, found that the United States Supreme Court's holding in City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L.Ed.2d 624 (1997), invalidated RFRA, and recommended that the Court find RFRA unconstitutional. The statute provides, in part:

> Government[1] may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person —
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(b). Prior to the Supreme Court's decision in Employment Div., Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 110 S. Ct. 1595, 108 L.Ed.2d 876 (1990), Courts had applied the "strict scrutiny" standard rendered in RFRA to claims for violation of the Free Exercise Clause of the First Amendment. See, Sherbert v. Verner, 374 U.S. 398, 83 S. Ct. 1790, 10 L.Ed.2d 965 (1963). In Smith, the Court rejected that standard, and held that neutral, generally applicable laws that incidentally burden religious practice, pass muster under

---

[1]   RFRA, as enacted, applied to both state and local governments, and to the federal government. 42 U.S.C. § 2000bb-2(1) (1993) (amended 2000).

the Free Exercise Clause if they are merely rationally related to a legitimate governmental interest. Smith, 494 U.S. at 877-82, 110 S. Ct. 1595. In 1993, Congress enacted RFRA for the express purpose of restoring the pre-Smith "strict scrutiny" standard.[2]

In 1997, the issue was revisited by the courts. In City of Boerne v. Flores, the Supreme Court held that RFRA violated the constitution because, in enacting it, Congress had exceeded its remedial powers under section 5 of the Fourteenth Amendment. The Court did not specify in its opinion whether it meant to invalidate RFRA only as applied to local and state governments (the application at issue in Boerne), or whether it meant to invalidate the statute as applied to the federal government as well as state and local governments.

The Eleventh Circuit Court of Appeals has not squarely addressed this issue. As recognized by the United Supreme

---

[2] Congress has indicated that the purposes of this chapter are:

(1) to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398, 83 S. Ct. 1790, 10 L.Ed.2d 965 (1963) and Wisconsin v. Yoder, 406 U.S. 205, 92 S. Ct. 1526, 32 L.Ed.2d 15 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened; and

(2) to provide a claim or defense to persons whose religious exercise is substantially burdened by government.

42 U.S.C.2000bb(b).

10

Court in Cutter, however, every Circuit court that has squarely addressed the question has held that Boerne did not invalidate RFRA in its entirety, and that the statute remains valid as applied to the federal government.  See Cutter, 125 S. Ct. at 2118 n.2 (citing O'Bryan v. Bureau of Prisons, 349 F.3d 399, 400-401 (7th Cir. 2003); Guam v. Guerrero, 290 F.3d 1210, 1220-22 (9th Cir. 2002); Kikumura v. Hurley, 242 F.3d 950, 958-960 (10th Cir. 2001); In re Young, 141 F.3d 854, 858-863 (8th Cir. 1998)); see also Henderson v. Kennedy, 265 F.3d 1072, 1073 (D.C. Cir. 2001); Christians v. Crystal Evangelical Free Church, 141 F.3d 854 (8th Cir. 1998).  These courts reasoned that Boerne's rationale for finding RFRA unconstitutional — that Congress exceeded its section 5 enforcement powers[3] when it enacted the statute — has no relevance to the question of the statute's constitutionality as applied to the federal government.  Finding this reasoning persuasive, the Court concludes that the Boerne court did not find RFRA unconstitutional as applied to the federal government, either under section 5 or the separation of powers doctrine.

---

[3]   Congress' ability to make laws applicable to the federal government does not stem from section 5.  That section authorizes Congress to pass legislation regulating the conduct of states only.

B. **RLUIPA**

In the same October 14, 2003, Order, the Magistrate Judge further recommended that the Court find RLUIPA[4] unconstitutional. The Eleventh Circuit and the United States Supreme Court, however, have foreclosed this recommendation. In Benning v. Ga., 391 F.3d 1299 (11th Cir. 2004), the Eleventh Circuit Court of Appeals upheld the constitutionality of RLUIPA. Similarly, the United States Supreme Court decision in Cutter v. Wilkinson, 533 U.S. ___, 125 S. Ct. 2113, 161 L.Ed.2d 1020 (May 31, 2005), found RLUIPA to pass constitutional muster.

While the statute does pass constitutional muster, it is, nevertheless, inapplicable to the instant case. RLUIPA declares that institutions receiving federal financial assistance may not "impose a substantial burden on the religious exercise" of an institutionalized person unless it is the "least restrictive means" of furthering "a compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The term "government" is defined as:

---

[4] The Court's use of RLUIPA more specifically refers to Section 3 of the Religious Land Use and Institutionalized Persons Act, the provision at issue in the instant case.

AO 72A
(Rev. 8/82)

>    (i) a State, county, municipality, or other governmental entity created under the authority of a State;
>
>    (ii) Any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
>
>    (iii) any other person acting under color of State law.

42 U.S.C. § 2000cc-5(4)(A).[5] Thus, "Section 3 covers state-run institutions — mental hospitals, prisons, and the like — in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise." Cutter, 125 S. Ct. at 2121 (citing 42 U.S.C. § 2000cc-1(a)). As such, RLUIPA is not an available avenue for federal inmates to seek recovery for alleged violation of their right to free exercise of their religion.

## IV. Defendants, Matthews, Watts, and Hobbs

By Order dated September 8, 2003, the Magistrate Judge recommended that the Court dismiss Plaintiff's claims against Defendant, Matthews, Watts, and Hobbs, because the claims are solely based on a theory of respondeat superior. In his objections, Plaintiff contends that Matthews, Watts, and Hobbs

---

[5] For the purpose of two provisions, neither of which are applicable to the instant case, RLUIPA applies to the federal government. See 42 U.S.C. § 2000cc-5(4)(B).

are liable for his injuries because they abdicated their duty to investigate and respond to his grievances. Plaintiff puts particular weight in the fact that he spoke to Defendant Hobbs about the alleged constitutional violations.

Despite finding RFRA applicable to federal entities, the Court concurs with the Magistrate Judge's recommendation that the claims against these Defendants be dismissed. Plaintiff has offered no evidence demonstrating that any of these defendants were personally involved in the alleged violations of his constitutional rights. Furthermore, to the extent Plaintiff relies on the fact that he spoke with Defendant Hobbs about his difficulties with the chaplaincy as a basis to impose liability, the Court is unpersuaded. The Magistrate Judge correctly noted that the warden reasonably relied on the staff chaplains to provide adequate and appropriate religious services to the inmate population in accordance with Bureau of Prison policy.

## V.   Defendants, Lamb and Fox

In a separate Order dated September 8, 2003, the Magistrate Judge recommended that the Court dismiss Plaintiff's claims against Defendants, Lamb and Fox. For the following

reasons, the motion to dismiss of Defendants, Lamb and Fox, will be denied.

### A. Free Exercise of Religion

Defendants argue that even if Plaintiff can establish a prima facie claim of violation of his right to freely exercise his religion, their conduct was reasonable in response to Plaintiff's requests because they had a rational basis for the actions taken. Once a plaintiff establishes a prima facie claim under RFRA, the burden shifts to the government to demonstrate that "application of the burden" to the claimant "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). Although the Supreme Court in <u>Turner v. Safley</u>, 482 U.S. 78, 107 S. Ct. 2254, 96 L.Ed.2d 64 (1987), relaxed the government's burden when a prisoner brings a free exercise claim under the First Amendment, there is no indication that the same standard applies when an inmate brings a claim pursuant to RFRA. In the prison context, the Eleventh Circuit utilizes the standard initially articulated by the Supreme Court in <u>Procunier v. Martinez</u>, 416 U.S. 396, 94 S. Ct. 1800, 40 L.Ed.2d 224 (1974).

15

Lawson v. Singletary, 85 F.3d 502, 510 (1996). The two prongs of the Martinez standard require: (1) the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression; and (2) the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Martinez, 416 U.S. at 413, 94 S. Ct. at 1811. Thus, a different analysis of the government's burden is called for under RFRA as opposed to a constitutional claim brought by a prisoner after Turner.

Under the Turner analysis, a court is to consider whether the prison regulation is "reasonably related to legitimate penological interests." Under RFRA, however, a court is to consider "infringement on such constitutional rights is justified only by a compelling [] interest and only when the regulation at issue is the least restrictive means for satisfying that interest." Lawson, 85 F.3d at 510. Thus, under RFRA, a court does not consider the prison regulation in its general application, but rather considers whether there is a compelling governmental reason, advanced in the least

restrictive means, to apply the prison regulation to the individual claimant. Id.

This is not to say, however, that prison officials do not have a compelling interest under RFRA in maintaining institutional safety and order. Cases interpreting the RFRA have consistently held that courts must give due deference to the judgment of prison officials, given their expertise and the significant security concerns implicated by prison regulations. Cutter, 125 S. Ct. at 2123 (noting that Congress intended for courts to give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.") (quoting 146 Cong. Rec. S7775 (daily ed. July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA) (quoting S.Rep. No. 103-111, at 10 (1993), reprinted in 1993 U.S.C.C.A.N. 1892, 1899, 1900)); Hart v. CSP-Solano, 2005 WL 1683581, at *5 & n. 8 (E.D. Cal. July 8, 2005) ("Congress has consistently indicated, in passing both RFRA and RLUIPA, that giving deference to the experience and expertise of prison officials is still appropriate."); Ra v. Braxton, 2005 WL 1533124, at *3 (W.D. Va. June 29, 2005) ("[C]ourts will

17

afford prison administrators due deference in establishing necessary regulations and procedures to maintain good order, security and discipline consistent with considerations of costs and limited resources.") (citing <u>Cutter</u>, 125 S. Ct. at 2123).

Although the Court concludes that Defendants, Lamb and Fox, have offered legitimate safety interests with regard to the placement of the Sukkah and permitting Plaintiff to eat only one meal per day in the Sukkah, Defendants have failed to demonstrate that the remaining alleged interests are sufficient to warrant dismissal at this stage in the proceedings. Defendants contend they accommodated Plaintiff's request for the Sukkah by the fact that the Sukkah was built. Defendants have not, however, provided the Court with any explanation as to why the Sukkah was not built until day six of the seven day festival. Defendants contend matzah was substituted for challah, and Plaintiff's request for the four fruits and plants was denied due to budgetary constraints. Defendant does not address Plaintiff's contention that the items were available for free from the Jewish community.

AO 72A
(Rev. 8/82)

### B. Equal Protection

Defendants argue that Plaintiff's equal protection claim fails to rise to the level of a constitutional violation. "To establish an equal protection claim, a prisoner must establish that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Brunskill v. Boyd, 141 Fed. Appx. 771, 776 (11th Cir. May 10, 2005) (quoting Jones v. Ray, 279 F.3d 944, 946-947 (11th Cir. 2001)).

While the Supreme Court recognizes that "[a] special chapel or place of worship need not be provided for every faith regardless of size, nor must a chaplain, priest or minister be provided without regard for the extent of the demand," the Court concluded that "reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First Amendment without fear of penalty." Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081-82 n.2 (1972).

Assuming the allegations asserted in the instant complaint to be true, as they must be on a motion to dismiss, Lamb and Fox have arguably violated Plaintiff's First Amendment and

AO 72A
(Rev. 8/82)

equal protection rights.[6] At the least, a factual question exists as to whether the burdens placed on Plaintiff's exercise of religion were in furtherance of a compelling governmental interest and were the least restrictive means of furthering that compelling governmental interest.

## CONCLUSION

After an independent review of the record, the Court **CONCURS, IN PART,** with the Magistrate Judge's recommendations. The motion to dismiss by Defendants, Watts, Hobbs, and Matthews, (Doc. No. 31) is **GRANTED**. The motion fo dismiss Plaintiff's RLUIPA claim by Defendants, Lamb and Fox, (Doc. No. 29) is **GRANTED**. The motion to dismiss Plaintiff's remaining claims by Defendants, Lamb and Fox, (Doc. No. 29) is **DENIED**.

**SO ORDERED,** this 25th day of October, 2005.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[6] Although the Court was aware of the Ford affidavit, indicating that the prison initially encountered difficulty finding a Rabbi to provide religious services to inmates, (see Doc. No. 32, Ex. D), it did not convert Defendants' motion to dismiss to a motion for summary judgment in order to consider the affidavit because the affidavit lacked credibility as it was dated nine months prior to the subject to which it attested.